**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:19-cv-02351-TLP-cgc |
| v. | ) | |
| | ) | |
| MICHAEL D. MASON, REGAN D. | ) | |
| REEDY, and CAPITAL ONE BANK | ) | |
| (USA), N.A. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff United States of America moves for summary judgment against Defendant Michael D. Mason to recoup $930,041 in unpaid taxes and associated statutory penalties that Defendant failed to pay for tax years 2000 to 2004. (ECF No. 14.) Plaintiff also seeks to foreclose federal tax liens against real property that Defendant allegedly owned when the Internal Revenue Service ("IRS") assessed Defendant's tax liabilities. (*Id.*) Defendant has responded. (ECF No. 15.) And Plaintiff has replied to Defendant's response. (ECF No. 16.) For the reasons below, the Court **GRANTS** Plaintiff's motion for summary judgment.

## PROCEDURAL BACKGROUND

Plaintiff sued Defendant to recover tax liabilities that Defendant owes to the federal government. (ECF No. 1.) Defendant moved to dismiss Plaintiff's action arguing that, because the IRS did not file notices of deficiency in his taxpayer records, Plaintiff lacked the authority to sue. (ECF No. 7, at PageID 28.) He also argued that the Court lacked jurisdiction to adjudicate

this case because, in another case brought by Defendant against the IRS, the U.S. Tax Court found that it had no jurisdiction over the matter. (ECF No. 7-1 at PageID 32.) This Court found these arguments meritless and denied Defendant's motion to dismiss. (ECF No. 22.)

Turning to this motion for summary judgment, Plaintiff requests that the Court reduce to judgment Defendant's income tax liability. (ECF No. 14.) It also requests that the Court authorize the foreclosure and judicial sale of some parcels of real estate in Cordova, Tennessee ("Cordova Property"). For the reasons below, the Court **GRANTS** Plaintiff's requests and therefore its motion for summary judgment in whole.

## STATEMENT OF FACTS

Plaintiff submitted an exhaustive record about Defendant's tax liability and his ownership interest in the Cordova Property, which Defendant does not contest.[1] The Court quotes these facts from Plaintiff's Concise Statement of Undisputed Facts (ECF No. 14-1) verbatim:[2]

### A.    Mason's Income Tax Liability is $930,041 as of April 22, 2019.

1.    A delegate of the Secretary of the Treasury made income tax assessments against Defendant Michael D. Mason ("Mason") based on the income tax returns he filed for the years 2000 to 2004. In addition, the fraudulent failure-to-file penalty provided by 26 U.S.C. § 6651(f) was assessed against him. These

---

[1] Defendant's response to this motion propounds several meritless legal arguments that the Court has already assessed—and dispatched—in its recent order denying Defendant's motion to dismiss (ECF No. 22). Defendant also appears to claim that the IRS lacked regulatory authority to make tax assessments against him. (ECF No. 15 at PageID 243–4.) The Court reemphasizes that these arguments lack legal merit. Nor do they raise any issues of fact. So Defendant admits Plaintiff's factual contentions. *See* LR 56.1 ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.").

[2] For clarity purposes, the Court has omitted all footnotes from Plaintiff's Concise Statement of Undisputed Facts.

assessments for taxes and penalties, together with the outstanding balance owed as of April 22, 2019, for each year are listed as follows:

| Tax Period | Date of Assessment | Type of Assessment | Amount of Assessment | Balance Outstanding as of April 22, 2019 |
|---|---|---|---|---|
| 2000 | 6/8/2009 | Income Tax | $47,249 | $91,356 |
| | 8/12/2009 | § 6651(f) penalty | $15,449 | |
| 2001 | 6/8/2009 | Income Tax | $54,641 | $223,961 |
| | 8/12/2009 | § 6651(f) penalty | $39,812 | |
| 2002 | 6/8/2009 | Income Tax | $46,652 | $186,834 |
| | 8/12/2009 | § 6651(f) penalty | $34,989 | |
| 2003 | 6/8/2009 | Income Tax | $54,552 | $209,703 |
| | 8/12/2009 | § 6651(f) penalty | $40,914 | |
| 2004 | 6/8/2009 | Income Tax | $59,267 | $218,187 |
| | 8/12/2009 | § 6651(f) penalty | $44,450 | |
| | | | | **Total: $930,041** |

Ex. 101-105 (Certificates of Assessments, Payments, and Other Specified Matters (Form 4340)); Ex. 106 (Transcripts of Accounts for the years 2000 to 2004.)

2.      Proper notice and demand for payment of the tax assessments described in paragraph 1, above, was given to Mason. Ex. 101-105.

3.      The amount of the income tax assessed was based on Mason's sworn income tax returns. Ex. 107-111, Income Tax Return (Forms 1040), line 57. For example, Mason reported a total tax of $47,249 on his income tax return for that year, and the IRS assessed that amount as against him. *Compare* Ex. 101, Form 4340, *with* Ex. 107 Form 1040, line 57. Mason signed each return under penalty of perjury, averring that it was true, correct, and complete. *Id*.

4.      Despite notice and demand for payment of the assessments described in paragraph 1, above, Mason has failed to pay the full amounts due and owing, and, as of April 22, 2019, he was indebted to the United States in the amount of $930,041. *Id.*

**B.      Mason Is Liable for the Failure-to-File Penalty.**

5.      For the years 2000 to 2004, Mason was required to file a return or request an extension by April 15th of the subsequent year. 26 U.S.C. § 6702.

6.     Mason did not file the income tax returns for the tax years 2000 to 2004 on April 15 of the subsequent year.  Ex. 101-105.

7.     Mason eventually filed his federal income tax returns for the 2000 to 2004 tax year on a timely basis. Ex. 107-111, Form 1040s, p. 2 (jurat).

8.     Mason was indicted on six counts of attempting to evade or defeat his federal income taxes for the 2000 to 2004 tax years under 26 U.S.C. § 7201. Ex. 112 (indictment).

9.     Mason pleaded guilty to one count of attempting to evade or defeat the federal income tax. Ex. 113 (plea agreement). In part of his plea agreement, Mason admitted that he had willfully attempted to evade and defeat his income tax liability for 2003 by attempting to conceal his true and correct income by filing a false employee Withholding Allowance Certificates (Form W-4) with his employer.  *Id*.

10.    As a further condition of his plea agreement, Mason admitted that a federal tax loss was incurred by the United States for purpose of determining criminal restitution against him in the amount of $229,064 for 2000 to 2004. *Id.* A criminal restitution judgment was entered in that amount on February 11, 2009.  Ex. 114.

11.    During his change of plea hearing, the prosecutor was asked what was the factual basis underlying the indictment. Ex. 115, Change of Plea Hrg. Tr., pp. 14:7-17:3.  The prosecutor made the following proffer:

> Had this case proceeded to trial, essentially the proof would have shown that the defendant, Mr. Mason, at the time period set forth in the indictment was a pilot employed by Federal Express, that ***he attempted to evade and defeat the determination of his 2000 through his 2004 income tax liabilities by failing to file income tax returns on the due date of April 15th of the said tax years set out in the indictment and by failing to make payment of the outstanding tax liability***. The defendant's conduct was coupled with affirmative acts of evasion in furtherance thereof including the filing of false W4 forms using nominee entities and individuals and engaging in substantial cash transactions to conceal the disposition of his income.

> Specifically, the proof would have shown that this investigation began in approximately July 2005 upon a referral from the Internal Revenue Service Examination Division. The subsequent criminal investigation revealed that Mr. Mason had failed to file income tax returns for tax years 2000 through 2004. ***The proof would have shown for these tax years defendant earned gross taxable income***

*above the statutory gross income amount requiring an individual to file a federal income tax return*.  The proof would have further shown that for these tax years, Mr. Mason signed false W4 employee withholding forms for each tax year claiming that he was exempt from federal income tax withholding on his wages thereby effectively ceasing any federal withholding from his paycheck.

The proof would have further shown that once Mr. Mason became aware of the investigation by the Internal Revenue Service into his failure to file these tax returns and his filing of the false W4s, that he sought to evade the determination of his tax due by committing several acts of evasion.  First of all, we would have shown that the defendant formed entities which were used as nominees.  The nominee entity names that he formed were MDM-01, LGM- 01 and CPM-01. Mr. Mason opened bank accounts under these nominee names, utilized these accounts for depositing his paychecks and also for his personal expenditures.

Proof would further have shown that Mr. Mason soon thereafter rented a postal mailbox in the name of the nominee entities and changed the mailing address for all the bank accounts that he had to this post office box. Mr. Mason also went from having direct payroll deposits from Federal Express to receiving paper payroll checks which he would then deposit into the nominee accounts or accounts that he also had opened in either his wife or son's names. The proof would have shown after the manual deposits were made of his paychecks, substantially all the payroll checks would be systematically withdrawn in U.S. currency.

The proof would have also shown another act of evasion in that Mr. Mason employed an attorney here in Shelby County to prepare legal documents making it appear as if Mr. Mason's residence in Cordova was mortgaged to a third-party company known as LGM-01, thus attempting to shelter his residence from any potential IRS collection efforts.  The evidence would have shown that the entity LGM-01 was a sham or nominee entity and that no money had actually changed hands and that the lien that had been placed against his residence was in effect nonexistent.

As a result of all these and other affirmative acts of evasion, the proof would have shown that there is a tax due and owing to the United States for tax years 2000 through 2004 of approximately $229,064.48.

*Id.*, pp. 14:7-16:24.

12.    The Court asked Mason if these statements were "correct and accurate," and Mason stated "yes." *Id.*, pp. 16:25-17:2. Mason was under oath when he affirmed the recitation of the facts the United States could prove beyond a reasonable doubt was correct and accurate. *Id.*, pp. 3:19-4:8.

## C.    Federal Tax Liens Attach to the Real Property.

13.    Federal tax liens arose on the dates of each assessment described in paragraph 1, above, and attached to all of Mason's property and rights to property, including any after-acquired interest in the property. See 26 U.S.C. §§ 6321, 6322.

14.    On July 16, 1987, Michael Mason and his wife, Linda Mason, purchased the property commonly known as 2807 Eagle Brier Cove, Cordova, Tennessee ("Real Property"). Ex. 116.  This property was held as tenants by the entireties. *Id.*

15.    Linda Mason died on July 2, 2006. Ex. 107-111, Form 1040 (jurat averring Linda Mason died on that date). At that point, Mason became the sole owner of the Real Property.

16.    Mason transferred the Real Property to himself and Valerie Glazier by quitclaim deed for nominal consideration on October 12, 2010.  Ex. 117.

17.    Mason and Glazier transferred the Real Property to Glazier by quitclaim deed for nominal consideration on March 4, 2013.  Ex. 118 (quitclaim deed).

18.    Glazier then transferred the Real Property to Mason by quitclaim deed on December 20, 2013.  Ex. 119.

19.    On October 29, 2014, Mason recorded a Gift of Deed with the Shelby County Recorder of Deeds, purporting to transfer the Real Property to Defendant Regan D. Reedy, in his capacity as the executor for the "Cherokee Country Government, Cherokee Nation of Indians by Treaty Law."  Ex. 120.

20.    Defendant Regan D. Reedy, in his capacity as executor, has not asserted an interest in the Real Property on behalf of the Cherokee Nation of Indians in this civil action.

21.    Defendant Capital One Bank (USA), N.A., was named as a party as it may have had or claimed an interest in the Real Property.  Compl., ¶ 32.

22.    The Clerk of Court entered default Reedy and Capital One Bank on July 29, 2019. Dkt. no. 11.

23.    The United States filed a notice of lien in the amount of $229,924, related

to the judgment of conviction entered against Mason by this Court, which was recorded on May 10, 2010. Ex. 121.

## LEGAL STANDARD

Now the Court will address the summary judgment standard. Courts are to grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "establish[es] or refute[s] an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (internal quotation marks omitted).[3] Not all disputes are genuine. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The reviewing court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

The evidentiary burden can shift. For example, the movant "bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)). If so, the burden then shifts. "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448–

---

[3] Each party must cite "particular parts of materials in the record" or show that the other party's cited materials do not establish the presence or absence of a genuine factual dispute. Fed. R. Civ. P. 56(c)(1); *see also Bruederle*, 687 F.3d at 776. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Pharos Capital Partners, L.P. v. Deloitte & Touche*, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008), *abrogation recognized by Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015)).

49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This means "[w]hen the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012) (citing *Celotex Corp.*, 477 U.S. at 323).

## ANALYSIS

In its motion, Plaintiff makes two general arguments. First, Plaintiff asserts that Defendant failed to file his income tax returns for tax years 2000 to 2004, and that he is now liable for the total corresponding amount of these unpaid tax liabilities. (ECF No. 14-2 at PageID 115–16.) By the same token, Plaintiff argues that Defendant is liable for fraudulent failure-to-file penalties in his total income tax liability. (*Id.* at PageID 116–19.) Second, Plaintiff argues that the Court should order the foreclosure of real property owned by Defendant. (*Id.* at PageID 119–22.)

In response, Defendant appears to claim that the IRS lacked regulatory authority to make tax assessments against him. (ECF No. 15 at PageID 243–44.) Defendant also argues that, even if the IRS had regulator authority, "[n]o properly signed Form 23C Assessment Certificate or Notice of Deficiency, which is required to be performed by the commissioner . . . has ever been placed into evidence to support their claim." (*Id.* at PageID 244.) In the end, Defendant "asserts that the commissioner did not have the jurisdiction for collection actions taken in the previous criminal cases or this present action to foreclose any alleged assets of the defendant." (*Id.* at PageID 246.)

Beside these arguments—all of which the Court found meritless in its recent order denying Defendant's motion to dismiss (ECF No. 22)—Defendant has not presented evidence

establishing any material issue of fact.  Because no material issue of fact exists, and because Plaintiff has shown more than enough evidence to support its allegations the Court **GRANTS** Plaintiff's motion for summary judgment.

## I.      Judgment as to Defendant's Tax Liability

### A.      Defendant's Income Tax Liability

Plaintiff argues "there can be no genuine dispute as to the validity of the United States' assessments and its entitlement to a judgment as a matter of law."  (ECF No. 14-2 at PageID 114.)  So Plaintiff reasons the Court should enter judgment in its favor for Defendant's $930,041 in unpaid tax liabilities.  (ECF No. 14-2 at PageID 115.)  As explained below, the Court finds Plaintiff's position well-taken and **GRANTS** Plaintiff's motion for summary judgment as to Defendant's tax liabilities.

The Court begins with the tax assessment.  "[A]n assessment is closely tied to the collection of a tax, i.e., the assessment is the official recording of liability that triggers levy and collection efforts."  *Hibbs v. Winn*, 542 U.S. 88, 101 (2004); *see also* 26 U.S.C. § 6203.  Under well-established tax law, "an assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court."  *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242–43 (2002) (citing *United States v. Janis*, 428 U.S. 433 (1976)); see also *United States v. Rohner*, 634 F. App'x 495, 499 (6th Cir. 2015).  When the government makes such a showing, the evidentiary burden shifts to the defendant.

For example, "[i]f an assessment is supported by 'a minimal evidentiary foundation,' the 'burden of disproving' it rests on the taxpayer."  *Rohner*, 634 F. App'x at 499 (quoting *United States v. Hammon*, 277 Fed. Appx. 560, 563 (6th Cir. 2008)).  "To meet this burden in most cases, the taxpayer must show 'the determination to be incorrect or arbitrary.'"  *Id.* at 499 (6th

Cir. 2015) (quoting *Indmar Prods. Co. v. Comm'r*, 444 F.3d 771, 776 (6th Cir. 2006)).  But "'[v]ague and general denials' of an assessment's accuracy do not . . . establish a reasonable denial sufficient to shift the burden [back] to the Government."  *Id.*

To meet its burden, Plaintiff submitted copies of Certificates of Assessments, Payments, and Other Specified Matters—also called Forms 4340—that prove the IRS made these assessments against Defendant.  (ECF No. 14-4; ECF No. 14-5; ECF No. 14-6; ECF No. 14-7; ECF No. 14-8.)  Plaintiff has also submitted account transcripts for tax years 2000 to 2004 that show the amount of interest accrued and statutory penalties associated with Defendant's unpaid taxes.  (ECF No. 14-9.)

This evidence is enough for Plaintiff to establish its evidentiary foundation of Defendant's income tax liability.  Defendant must therefore present evidence establishing a genuine issue of material fact as to his tax liability to survive this portion of Plaintiff's motion for summary judgment.  Defendant has failed in this endeavor.

His response to Plaintiff's motion for summary judgment lacks any factual allegations that suggest Plaintiff's "determination to be incorrect or arbitrary."  *Indmar Prods. Co.*, 444 F.3d at 776.  Instead, he claims based on meritless legal arguments that the IRS lacks authority to assess taxes against him, and that the Court lacks jurisdictional authority to adjudicate this action.  (ECF No. 15.)  The Court has done away with these arguments in its recent order denying Defendant's motion to dismiss.  (ECF No. 22.)  As a result, the Court **GRANTS** Plaintiff's motion for summary judgment as to Defendant's tax liabilities and **ADJUDGES** that Defendant owes $930,041 to the federal government.

### 1.      Defendant's Fraudulent Failure-to-File Penalty Liability

Included within Defendant's total tax liabilities of $930,041 are penalties that the IRS assessed against Defendant because he failed to timely file his income tax returns for tax years 2000 to 2004. Based on the Certificates of Assessments, Payments, and Other Specified Matters (ECF No. 14-4; ECF No. 14-5; ECF No. 14-6; ECF No. 14-7; ECF No. 14-8) and Defendant's tax account transcripts (ECF No. 106), these penalties amount to around $175,000.

A portion of this $175,000 penalty is the enhanced penalty the IRS assessed against Defendant based on his alleged fraudulent failure to file those returns. "While the IRS imposes various penalties upon those who do not file income tax returns as mandated by statute, Section 6651(f) of the Internal Revenue Code imposes greater penalties upon those who are shown to have acted fraudulently in their failure to file." *United States v. Rippl*, No. 1:16-CV-1139, 2017 WL 6508383, at *3 (N.D. Ohio July 5, 2017), *aff'd*, No. 17-3941, 2018 WL 2972448 (6th Cir. May 23, 2018), *cert. denied*, 139 S. Ct. 614, 202 L. Ed. 2d 432 (2018). "This section provides that '[i]f any failure to file any return is fraudulent,' the monthly penalty can be up to 15% of the tax amount with a maximum aggregate penalty of 75% of the tax amount." *Id.* (quoting 26 U.S.C. § 6651(f)).

And so Plaintiff seeks to have the Court find that Defendant fraudulently failed to file his income tax returns. (ECF No. 14-2 at PageID 116–19.)

To prove fraudulent failure to file, Plaintiff must show that Defendant "intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent collection of tax." *Id.* (citing *Green v. Comm'r, T.C. Memo. 2016–67*, 2016 WL 1559621, at *11 (Apr. 14, 2016)). Based on the record, the Court finds that Defendant has met its burden. And Defendant has presented no evidence disputing Plaintiff's version of the facts. For the reasons

below, the Court thus **GRANTS** Plaintiff's motion for summary judgment as to Defendant's liability for having fraudulently failed to file his income tax returns for tax years 2000 to 2004.

### a.       Collateral Estoppel Doctrine Applied to Tax Year 2003

Plaintiff argues that Defendant is estopped from contesting that he engaged in fraudulent conduct in 2003.  "Federal Courts have consistently held that, under appropriate circumstances, the doctrine of collateral estoppel may apply to issues litigated in a criminal case, even by virtue of a guilty plea, which a party seeks to relitigate in a subsequent civil proceeding." *Gardner v. United States*, No. 3:06-01211, 2009 WL 10679418, at *2 (M.D. Tenn. Sept. 30, 2009), *aff'd*, 443 F. App'x 70 (6th Cir. 2011) (quoting *Gray v. Comm'r I.R.S.*, 708 F.2d 243, 246 (6th Cir. 1983)).  "[A] conviction for federal income tax evasion, . . . upon a plea of guilty, . . . conclusively establishes fraud in a subsequent civil tax fraud proceeding through application of the doctrine of collateral estoppel." *Gray*, 708 F.2d 243, at 246.  What is more, "[a] guilty plea is as much a conviction as a conviction following jury trial.  The elements of criminal tax evasion and civil tax fraud are identical. *Id*.

To support its claim, Plaintiff asserts that, "[g]iven [Defendant's] plea agreement and subsequent conviction, there can be no genuine dispute regarding his fraudulent intent for tax year 2003." (ECF No. 14-2 at PageID 117–18.)  The Court finds that the record supports Plaintiff's position. (ECF No. 14-1 at PageID 109–10; ECF No 14-6; ECF No. 14-7.)  What is more, Defendant disputes none of the facts Plaintiff asserts.  As to tax year 2003, the Court finds that Defendant's plea agreement and later conviction conclusively establish Defendant's liability for the enhanced statutory penalties that the IRS assessed against him for that year.  The Court thus **GRANTS** summary judgment on Defendant's failure-to-file penalty liability for tax year 2003.

**b.      Fraudulent Intent Found for Tax Years 2000 to 2004**

Plaintiff next argues that, just as Defendant's plea agreement and later conviction that show his fraudulent intent for tax year 2003, no genuine dispute of material fact exists as to Defendant's fraudulent failure to file income tax years for tax years 2000 to 2004.  (ECF No. 14-2 at PageID 118.)

In tax cases like this one, "[a] court may infer fraudulent intent by looking to various kinds of circumstantial evidence."  *Kalo v. C.I.R.*, 1998 WL 382741, at *6 (6th Cir. 1998) (citing *Solomon v. Commissioner*, 732 F.2d 1459, 1461 (6th Cir. 1984)).  These types of circumstantial evidence are sometimes called "badges of fraud."  "Such 'badges of fraud' include:  (1) failure to file tax returns; (2) an understatement of income over an extended period; (3) failure to furnish the government with access to records; (4) failure to keep adequate books and records; (5) the sophistication of the taxpayer; (6) concealment of bank accounts; (7) giving implausible or inconsistent explanations of behavior; and (8) willingness to defraud another in a business transaction."  *Id.* (citing *Solomon*, 732 F.2d 1459 at 1461–62).  "While no single factor is necessarily conclusive, the combination of a number of these badges of fraud constitutes persuasive evidence of fraud."  *Id.* (quoting *Solomon*, 732 F.2d 1459 at 1461–62).

Plaintiff points to many facts arguing that they are badges of fraud that combine to show Defendant "acted with a fraudulent intent when he failed to timely file his income tax returns." (ECF No. 14-2 at PageID 119.)  First, during Defendant's change of plea hearing, Defendant admitted that he "attempted to evade and defeat the determination of his 2000 through 2004 income tax liabilities by failing to file income tax returns on the due date of April 15th of the said tax years set out in the indictment and by failing to make payment of the outstanding tax liability."  (ECF No. 14-18 at PageID 210, 213.)  Second, Defendant admitted that he "signed

false W4 employee withholding forms for each tax year claiming that he was exempt from federal income tax withholding on his wages thereby effectively ceasing any federal withholding from his paycheck." (*Id.* at PageID 211, 213.) Third, Defendant admitted that he created several nominee entities to hide his income and expenditures. (*Id.* at PageID 211–12, 213.) Fourth, the Defendant admitted he "employed an attorney . . . to prepare legal documents making it appear as if [his] residence . . . was mortgaged to a third-party company . . . , thus attempting to shelter his residence from any potential IRS collection efforts." (*Id.* at PageID 212, 213.) Finally, Defendant admitted that "the [third-party company] was a sham or nominee entity and that no money had actually changed hands and that the lien that had been placed against his residence was in effect nonexistent." (*Id.*)

The Court agrees with Plaintiff that these undisputed facts combine to establish that Defendant acted with fraudulent intent when he did not file his income tax returns for tax years 2000 to 2004. In this way, the Court finds that these facts reflect many "badges of fraud" that justify the enhanced statutory penalties under the Internal Revenue Code. *Kalo*, 1998 WL 382741, at *6. Plus Defendant does not dispute Plaintiff's version of the facts. The Court thus **GRANTS** summary judgment on Defendant's fraudulent failure-to-file penalty liability for tax years 2000 to 2004.

## II.     Foreclosure on Defendant's Real Property

Turning now to the real estate lien, Plaintiff argues that "[t]here can be no genuine dispute that the United States holds a valid lien interest against" the Cordova Property. (ECF No. 14-2 at PageID 119.) So Plaintiff requests that the Court "order the sale of the Real Property, with all of the available proceeds (after payment of costs of sale) to be distributed to the United States." (*Id.*) Given the record here and the fact that Defendant does not contest any

of Plaintiff's factual contentions, for the reasons below the Court **GRANTS** Plaintiff's request to foreclose the Cordova Property.

## A.     Federal Tax Liens Attach to Defendant's Real Property

For the Court to grant Plaintiff's request to foreclose the Cordova Property, Plaintiff must show that federal tax liens attached to that property.  As explained below, the record persuades the Court that federal tax liens have attached to Defendant's Cordova Property.

When a person owes taxes, if that person "neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  Federal tax liens "arise at the time [assessments are] made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."  26 U.S.C. § 6322.  The Supreme Court has interpreted the statute and held "[t]he statutory language 'all property and rights to property,' appearing in § 6321 . . . is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–20 (1985).  As a result, Plaintiff "may request the judicial sale of property on which the United States has a tax lien in order to satisfy a delinquent tax liability."  *United States v. Reyes*, No. 15-cv-02459-STA-dkv, 2016 WL 590247, at *9 (W.D. Tenn. 2016) (citing 26 U.S.C. § 7403; *United States v. Rodgers*, 461 U.S. 677, 681 (1983)).

According to the record, Defendant bought the Cordova Property with his wife in 1987. (ECF No. 14-1 at PageID 112.)  In 2006, Defendant's wife died, leaving Defendant as the property's only owner.  (*Id.*)  Three years after the death of Defendant's wife, the IRS assessed the tax liabilities against him.  (ECF No. 14-4; ECF No. 14-5; ECF No. 14-6; ECF No. 14-7;

ECF No. 14-8.) The Court thus agrees with Plaintiff's assertion that Defendant "was the sole owner of [the Cordova Property] at the time the liens arose and attached to the Real Property." (ECF No. 14-2 at PageID 120.)

Since the IRS assessed the tax liabilities against him, Defendant appears to have transferred the property to other individuals, including Defendant Regan D. Reedy ("Reedy"), for nominal consideration. (ECF No. 14-1 at PageID 112; ECF No. 23.) As Plaintiff points out (ECF No. 14-2 at PageID 120), the federal tax liens continued to attach to the Cordova Property despite the transfers. *See United States v. Big Value Supermarkets, Inc.*, 898 F.2d 493, 497 (6th Cir. 1990) ("It is settled federal law that transfers subsequent to the attachment of a federal lien do not affect the lien in any way."); *see also United States v. Bess*, 357 U.S. 51, 57 (1958). As a result, the Court finds that the record shows that federal tax liens have attached to the Cordova Property, triggering the federal government's ability to foreclose it.

### B.      Plaintiff Is Entitled to Proceeds from Sale of the Cordova Property

Having found that federal tax liens attach to the Cordova Property, the Court must next determine whether any parties other than Plaintiff have an interest in the proceeds from the property's sale. For the reasons below, the Court finds that the answer is no. Plaintiff is the only party entitled to such proceeds.

First, the law is clear that federal law controls where the proceeds from the sale go. "Federal law determines the relative priority of federal tax liens and any competing liens." *United States v. Hawthorne*, No. 1:12 CV 3041, 2014 WL 2212939, at *3 (N.D. Ohio May 28, 2014) (citing *Aquilino v. United States,* 363 U.S. 509, 513–14 (1960)). So what is that federal law? "In the absence of statutory authority to the contrary, 'priority for the purposes of federal

law is governed by the common-law principle that 'first in time is the first in right.'" *Id.* (quoting *United States v. McDermott*, 507 U.S. 447, 449 (1993)).

"[W]hen a claim or interest of the United States is established, [the Court] 'may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.'" *United States v. Winsper*, 680 F.3d 482, 488 (6th Cir. 2012) (quoting 26 U.S.C. § 7403(c)). The Internal Revenue Code "provides that after the Court has resolved all claims to the property it may order a sale of the property and distribute the proceeds according to the respective interests." *Reyes*, No. 15-CV-02459-sta-DKV, 2016 WL 590247, at *9 (W.D. Tenn. 2016) (citing 26 U.S.C. § 7403(c)). By the same token, if a party fails to assert their interest in property subject to foreclosure, they will forfeit the ability to claim entitlement to any proceeds from the foreclosure. *See id.*

As the Court determined above, federal tax liens have attached to the Cordova Property. And as Plaintiff sets forth in the record, Judge S. Thomas Anderson assessed a criminal restitution lien against Defendant, which also attached to the Cordova Property. (ECF No. 14-7 at PageID 195.) The Court thus finds that Plaintiff has proven its entitlement to the proceeds of Defendant's property foreclosure, and that Plaintiff may allocate the proceeds as it sees fit toward Plaintiff's tax, interest, and penalty liabilities. *In re Se. Waffles, LLC*, 460 B.R. 132, 140 (B.A.P. 6th Cir. 2011), *aff'd*, 702 F.3d 850 (6th Cir. 2012).

The Court further finds that the only other parties that could have claimed an interest in the Cordova Property—Reedy and Defendant Capital One Bank (USA), N.A. ("Capital One")— have failed to assert any claim. Reedy and Capital One have not responded to Plaintiff's complaint. And the Clerk of Court has recently entered an entry of default against both Reedy

and Capital One. (ECF No. 11.) The Court thus agrees with Plaintiff that it "should accordingly determine that Reedy and Capital One have not asserted any rights, titles, claims, or interests in the Real Property and they should take nothing from a sale of the Real Property." (ECF No. 14-2 at PageID122.) (citing *United States v. Davis*, No. 1:13-CV-00695, 2014 WL 7524878, at *4 (S.D. Ohio Oct. 15, 2014), *report and recommendation adopted*, No. 1:13-CV-00695, 2014 WL 7272221 (S.D. Ohio Dec. 18, 2014)).

The Court thus **GRANTS** Plaintiff's motion for summary judgment as to the foreclosure of the Cordova Property. And the Court **ADJUDGES** that Plaintiff may sell the Cordova Property under 26 U.S.C. § 7403 free and clear of all rights, titles, claims, and interests of the parties here, and use the proceeds of that sale to pay the federal tax liens encumbering the Cordova Property.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for summary judgment.

**SO ORDERED**, this 27th day of November, 2019.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE